UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSE JAMISON,

              Petitioner,

   -vs-

MARK BRADT,
SUPERINTENDENT

              Respondent.

_____

**DECISION AND ORDER**
**No. 09-CV-00747T**

## I.   Introduction

*Pro se* Petitioner Jesse Jamison("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered July 25, 2001, in New York State, County Court, Monroe County (Hon. Elma A. Bellini), convicting him, after a jury trial, of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.25 [4]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

On November 5, 2000, Shalonda Beveritt-Jamison, Petitioner's wife, left for work at 6:30 a.m., leaving her children, including Cedreuna Williams ("Cedreuna" or "the victim"), in the care of Petitioner.  At approximately 11:30 a.m., Petitioner was awakened by Cedreuna's three-year-old sister, Reneisha.   Reneisha told

Petitioner that Cedreuna had wet her pants.  Petitioner requested that Reneisha tell her five-year-old sister Rayonia to get Cedreuna a clean pair of pants.  Petitioner proceeded to the bedroom Cedreuna shared with her sisters and put Cedreuna across his lap to "whoop her," but saw that she had again wet her pants.  Petitioner "whooped her five times" and told her to go to bed.  Petitioner left the room, but came back a short time later to discover that Cedreuna had again soiled her pants.  Petitioner had Rayonia change Cedreuna and wash her up in the bathroom.  T.T. 454, 513-515.

When Cedreuna returned to the bedroom, Petitioner was waiting for her.  Petitioner struck Cedreuna on her bottom causing her to fall forward and strike her middle against the bottom wooden portion of her oak bunk-bed and then fall backward striking her head on the floor.  Cedreuna started to scream, holding her legs in the air.  While she lay on the floor, Petitioner continued to try to hit her bottom, but struck other areas of her body because she was moving around.  When Petitioner finished hitting Cedreuna, he picked her off the floor, put her in her bed, and left to go to a friend's house.  T.T. 454-455, 513-517.

When Petitioner's wife returned home from work at approximately 4:00 p.m. that day, she found Cedreuna's lifeless body laying next to her oak bunk-bed.  Petitioner arrived home from his friend's house shortly thereafter and asked what was wrong with Cedreuna.  Petitioner told his wife that he did not know why

Cedreuna was on the floor.  Petitioner tried CPR, while his wife called 911.   When police and emergency personnel arrived, Petitioner told them that he had "whooped [Cedreuna]" and put her to bed.  T.T. 285-288, 328-329.  Petitioner told Officer Randy Holmes of the Rochester Police Department ("RPD") that he spanked Cedreuna an hour before calling 911 and that when he went to check on her he found her unresponsive.  T.T. 366-367.  Petitioner told Sergeant Annie Craven Walker of the RPD that he beat Cedreuna for wetting her clothes, that she went to sleep thereafter, but then came downstairs and played a game before going back upstairs.  He further explained to Sergeant Craven Walker that he was home with the children all day.  T.T. 391, 402.  Petitioner told Officer Charles LoFaso of the RPD that he spanked Cedreuna at approximately 12:00 to 12:30 p.m. and put her to bed.  He said he checked on her at 1:00 p.m. and had one of the other girls in the home check on her at 2:00 p.m.  At 2:00 p.m., Petitioner left to get a drink at a nearby store.  T.T. 416.

Eventually, Petitioner provided Investigator Evelyn Baez of the RPD with a full account of what occurred on November 5, 2000, which included striking Cedreuna with such force that she fell forward striking the wooden bed, then falling backward hitting her head.  Petitioner further acknowledged that he did not stay at the house after striking Cedreuna and that he did not return until after his wife had returned from work.  T.T. 454-455, 513-517.

Dr. Thomas Smith, a Deputy Medical Examiner for the Monroe County Medical Examiner's Office, performed the autopsy on Cedreuna. The external examination revealed bruising above her right and left eyebrows, on her forehead, and on her back and buttocks. T.T. 543-546, 552. The internal examination revealed that Cedreuna's abdomen was full with more than a cup of blood. T.T. 559. After further investigation, Dr. Smith observed tearing in the mesentery area, the omentum, the small bowel and observed three separate lacerations to the liver. T.T. 560-562. Dr. Smith testified that all of these internal injuries were caused by blunt force trauma to the abdomen and that they occurred within a couple hours of death. T.T. 562, 564, 572. Dr. Smith testified further that the cause of death was "internal injuries due to blunt trauma to the abdomen." T.T. 569. Dr. Smith also testified that the internal injuries suffered by Cedreuna were not consistent with spanking. T.T. 570.

A jury trial was conducted before the Hon. Bellini, at the close of which Petitioner was found guilty of Murder in the Second Degree and subsequently sentenced to fifteen years to life imprisonment. T.T. 715; Sentencing Mins. [S.M.] 16.

On November 23, 2007, the Appellate Division, Fourth Department unanimously affirmed the judgment of conviction, and leave to appeal was denied. People v. Jamison, 45 A.D.3d 1438 (4th Dep't 2007); lv. denied, 10 N.Y.3d 766 (2008).

On or about January 13, 2009, Petitioner filed a motion for a writ of error coram nobis in the Appellate Division, Fourth Department. That motion was denied on March 20, 2009, and leave to appeal was denied. <u>People v. Jamison</u>, 60 A.D.3d 1439 (2009), <u>lv. denied</u>, 2009 N.Y. Slip Op 98509U (2009).

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) incorrect jury instructions; (2) the verdict was against the weight of the evidence; (3) ineffective assistance of appellate counsel; and (4) cumulative trial court error deprived him of a fair trial. <u>See</u> Pet. ¶ 22A-D, Attach., Grounds Five-Seven (Dkt. No. 1);  Mem. in Support (Dkt. No. 2); Reply (Dkt. No. 8).

## III. General Principles Applicable to Habeas Review

### A.   The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if

the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to

suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003).  A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B.  Exhaustion and Procedural Default**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>,

696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).  However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263, n.9, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989) (other citations omitted).  Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Id.  When a petitioner no longer has "remedies available" in the state courts, because he is procedurally barred by state law from raising such claims, the habeas court may deem the claims exhausted but procedurally defaulted. Id. at 120-21 (quoting Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990)).

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence).  See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992).

### C.    The Adequate and Independent State Ground Doctrine

The Supreme Court has "made clear that the adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris v. Reed, 489 U.S. 255, 262 (1989) (citations omitted).

## IV.  Petitioner's Claims

### 1.   Claims Three and Four are Unexhausted and Procedurally Defaulted

In grounds three and four of the petition, Petitioner contends that: (1) he was denied a fair trial by the trial court's allegedly incorrect jury instruction; and (2) the verdict was against the weight of the evidence. See Pet. ¶ 22C-D; Mem. in Support at 7-9. These claims, which were not raised in Petitioner's leave application to the New York Court of Appeals, are unexhausted for purposes of federal habeas review. See Resp't App. F; see Grey, 933 F.2d at 119. Nonetheless, as discussed below, because Petitioner no longer has a state court forum within which to raise these claims, the Court deems them exhausted but procedurally defaulted. See id.

Petitioner raised both of these claims on direct appeal.[1]  See Resp't App. A.  However, Petitioner failed to pursue these claims in his application for leave to appeal to the New York Court of Appeals, and thus failed to properly exhaust them by presenting them to the state's highest court.  See Resp't App. F;  Grey, 933 F.2d at 119 ("Under 28 U.S.C. § 2254(b), applicants for habeas corpus relief must 'exhaust [ ] the remedies available in the courts of the State.'  In doing so, a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition.") (quoting Pesina, 913 F.2d at 54).

The claims, however, must be deemed exhausted because Petitioner would face an absence of corrective process were he to return to state court in an attempt to exhaust them.  State appellate review is no longer available to him;  he cannot again seek leave to appeal the claims in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled.  See N.Y. Court Rules § 500.20.  Moreover, collateral review of the claims is also barred because the issues were previously determined on the merits on direct appeal.  See CPL § 440.10 [2][a];  see also CPL § 440.10 [2][c] (barring review if

---

[1]    With respect to Petitioner's jury instruction claim, the Fourth Department determined that the claim was unpreserved for appellate review, and, in any event, meritless.  Jamison, 45 A.D.3d at 1440.  With respect to Petitioner's weight of the evidence claim, the Fourth Department determined that the claim was meritless.  Id.

a claim could have been raised on direct review); _accord_, _Grey_, 933 F.2d at 120-21. The state procedural rules that give rise to the constructive exhaustion of these claims also render them procedurally defaulted. _See, e.g._, _Ramirez v. Att'y General of N.Y._, 280 F.3d 87, 94 (2d Cir. 2001) ("Even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law.") (citing _Grey_, 933 F.2d at 120-21).

This Court, however, may reach the merits of Petitioner's claims, despite the procedural default, if he can demonstrate cause for the default and prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice. _See Coleman_, 501 U.S. at 750. Liberally construing Petitioner's pleadings, he alleges ineffective assistance of trial counsel as cause for the procedural default. A claim of ineffective assistance of counsel may establish cause for a procedural default. _See Edwards v. Carpenter_, 529 U.S. 446, 451 (2000); _McCleskey v. Zant_, 499 U.S. 467, 494 (1991); _United States v. Frady_, 456 U.S. 152, 168 (1982). However, a claim of ineffective assistance of counsel may not be used, as here, to establish cause for the procedural default when it has not been raised as an independent claim in the state courts. _Murray v. Carrier_, 477 U.S. 478, 488-90 (1986); _see e.g._, _Ross v. Burge_, 03 Civ. 3867, 2008 U.S. Dist.

LEXIS 20141, *20-22 (S.D.N.Y. March 21, 2008) (finding Petitioner's ineffective assistance of trial counsel claim cannot serve as cause for a procedural default because it was never presented to the state court as an independent claim). Moreover, Petitioner has failed to demonstrate that this Court's failure to review the claims will result in a miscarriage of justice. See Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002). Accordingly, his claims are dismissed as procedurally defaulted.

Finally, to the extent Petitioner's weight of the evidence claim (Ground Four of the petition) could be construed as an insufficiency of the evidence claim, that claim, although properly exhausted in the state courts, is procedurally barred from habeas review. On direct appeal, the Fourth Department rejected this claim on a state procedural ground because Petitioner failed to properly preserve the issue for appellate review. See Jamison, 45 A.D.3d at 1438-40. The state court's reliance on New York's preservation rule (codified at N.Y. Crim. Proc. Law ("CPL") § 470.05 [2]) is an adequate and independent state bar that precludes this Court's review of the claim. See Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). Liberally construing Petitioner's pleadings, he alleges ineffective assistance of trial counsel as cause for the default. As discussed above, however, Petitioner failed to raise ineffective assistance of trial counsel as a stand-alone claim in

-12-

the state courts and he therefore cannot rely upon it to establish cause for the procedural default. Moreover, he has failed to demonstrate that this Court's failure to review the claim will result in a fundamental miscarriage of justice. Thus, to the extent Petitioner's weight of the evidence claim could be construed as an insufficiency of the evidence claim, that claim is procedurally defaulted from review by this Court.

## 2. **Grounds One, Two, and Four-Six are Meritless**

In grounds one, two, four, five, and six of the petition, Petitioner argues that he received ineffective assistance of appellate counsel. The gravamen of Petitioner's claim is that appellate counsel raised weak issues on direct appeal, while foregoing stronger issues, namely, ineffective assistance of trial counsel. See Pet. ¶ 22A, B, D, Attach., Grounds Five and Six; Mem. in Supp. at 9-24. Petitioner raised this issue in his coram nobis application, which was summarily denied by the Fourth Department. See Jamison, 60 A.D.3d 1439; see Sellan v. Kuhlman, 261 F.3d 303 (2nd Cir. 2001) (holding that a summary denial constitutes an adjudication on the merits). As discussed below, this claim is meritless.

When claiming ineffective assistance of counsel, at the trial or appellate level, Petitioner must show that the representation was fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding

would have been different.  Strickland v. Washington, 466 U.S. 668, 687 (1984);  see also Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994).  Appellate counsel is not required to raise all colorable claims on appeal and may winnow out weaker arguments and focus on one or two key claims that present "the most promising issues for review."  See Jones v. Barnes, 463 U.S. 745, 751-53 (1983).  Appellate counsel's "[f]ailure to make a meritless argument does not amount to ineffective assistance of counsel."  United States v. Arena, 180 F.3d 380, 396 (2nd Cir. 1999), cert. denied, 531 U.S. 811 (2000).  The strong presumption is that counsel has "rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgement."  Strickland, 466 U.S. at 689-90.

Petitioner argues that appellate counsel's assistance was constitutionally deficient.  He asserts, generally, that appellate counsel's brief "excluded important issues . . . [and] made weak arguments upon significant issues."  Pet., Attach. at Ground Five. He also asserts, more specifically, that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel on direct appeal.  In support of the latter contention, he cites a myriad of alleged errors on the part of trial counsel. Petitioner argues, inter alia, that trial counsel failed to object to the allegedly incorrect jury instruction, failed to prepare a defense, failed to interview expert witnesses for the defense,

-14-

failed to call additional witnesses, and failed to investigate the
case.  As discussed below, this Court cannot find that appellate
counsel provided constitutionally deficient performance and that,
but for appellate counsel's deficient performance, the outcome of
Petitioner's appeal would have been different.

At the outset, the Court notes that, contrary to Petitioner's
contentions, appellate counsel did submit a thorough, well-
researched brief in which he persuasively argued four points on
direct appeal: (1) the evidence was insufficient to sustain a
conviction for murder in the second degree; (2) the proof submitted
to the grand jury was legally insufficient to support the
indictment; (3) the jury instructions regarding depraved
indifference murder, before the grand jury and the petit jury, were
incorrect; and (4) Petitioner's conviction for depraved
indifference murder was not supported by the weight of the
evidence.  See Resp't App. A.  Petitioner's direct appeal was
perfected in April of 2007, after numerous decisions by the Court
of Appeals holding that depraved indifference murder cannot be
charged in the vast majority of one-on-one homicides.[2]  Citing
these developments in the law since Petitioner's June 2001

---

[2]

In 2006, the New York Court of Appeals decided People v. Feingold, 7 N.Y.3d
288, 294 (2006), which overruled People v. Register, 60 N.Y.2d 270 (1983).  In
essence, Feingold held, contrary to Register, that in a one-on-one attack with
a deadly weapon intentionally directed at a particular person who then dies as
a result of the attack, depraved indifference murder will not lie; the proper
charge is either intentional murder (Penal Law § 125.25 [1]) or intentional
manslaughter (manslaughter in the first degree, Penal Law § 125.20 [1]).

conviction, appellate counsel raised four claims specifically related to depraved indifference murder. Given the developments in the law at the time of Petitioner's appeal, it was not unreasonable for appellate counsel to limit the issues in his brief to those related to various aspects of depraved indifference murder.

It appears that Petitioner also faults appellate counsel for raising unpreserved issues -- i.e., insufficiency of the evidence and that the jury instruction was incorrect -- on direct appeal. See Mem. in Support at 7-8. To the extent he argues such, such an argument is meritless. Appellate counsel may "raise an unpreserved issue in the hope of convincing the appellate court to review the unpreserved issue in the exercise of its interest of justice jurisdiction." Sutherland v. Senkowski, 02-CV-3833, 03-MISC-0066, 2003 U.S. Dist. LEXIS 23863, *35 (E.D.N.Y. Oct. 17, 2003). Courts in this Circuit have repeatedly held that appellate counsel is not ineffective for raising an unpreserved issue. See Prince v. Ercole, 08-CV-5197 (JG), 2009 U.S. Dist. LEXIS 69724, *43-44 (E.D.N.Y. May 1, 2009); Richburg v. Hood, 794 F. Supp. 75, 77 (E.D.N.Y. 1992) ("This court cannot conclude that the decision by appellate counsel to raise an unpreserved issue on appeal and to address this issue to the interest-of-justice jurisdiction of the appellate court constituted 'representation . . . below an objective standard of reasonableness.'") (quoting Strickland, 466 U.S. at 687-88, 694). Here, despite the lack of preservation, the

Fourth Department reviewed both of Petitioner's claims in the interest of justice and found them to be meritless. See Jamison, 45 A.D.3d at 1438-40.

Additionally, appellate counsel cannot be faulted for failing to raise an ineffective assistance of trial counsel claim on direct appeal because that claim itself is meritless.

Petitioner argues that trial counsel was ineffective for failing to object to the court's allegedly incorrect jury instructions. See Mem. in Support at 8. To the extent Petitioner claims that trial counsel was ineffective for failing to object to the jury instructions based on the Court of Appeals 2006 decision in Feingold (see footnote 5 above), that claim is meritless. Petitioner was convicted in 2001, long before the Feingold decision was rendered. Thus, trial counsel could not have been expected to object to a jury charge on a ground that was not to become the law in this state until five years after Petitioner's trial. See Haynes v. Ercole, No. 08-CV-3643, 2011 U.S. Dist. LEXIS 61293, *13 (E.D.N.Y. June 8, 2011) (counsel not ineffective for not predicting Feingold); Lisojo v. Rock, 09 Civ. 7928, 2010 U.S. Dist. LEXIS 31152, *10 (S.D.N.Y. Mar. 31, 2010) (On habeas review, defense counsel's performance is evaluated by the state of New York's depraved indifference murder case law at the time of trial), report & rec. adopted, 2010 U.S. Dist. LEXIS 42262 (S.D.N.Y. Apr. 29, 2010); Fore v. Ercole, 594 F.Supp.2d 281, 305 (E.D.N.Y. 2009)

("[T]rial counsel cannot be held to be ineffective when he reasonably relied on the interpretation of New York law regarding depraved indifference murder as it was at the time of petitioner's trial."). Because the jury instruction that was given at Petitioner's trial accurately conveyed the elements of depraved indifference murder under Penal Law § 125.25 [4] as of the time of Petitioner's trial (under People v. Register), there was no basis for trial counsel to object. T.T. 695-699; Policano v. Herbert, 7 N.Y.3d 588 (2007); People v. Coleman, 70 N.Y.2d 817, 819 (1987). Accordingly, it was not unreasonable for appellate counsel not to have raised this non-meritorious issue on direct appeal.

Petitioner also faults appellate counsel for failing to raise an ineffective assistance of trial counsel claim based on counsel's alleged failure to: (1) prepare a defense; (2) interview an expert witness for the defense; (3) call additional witnesses; and (4) investigate the case. As Respondent correctly points out, these claims are primarily based upon matters outside the record, and, therefore would not have been appropriate for direct appeal. See Resp't Mem. at 10-11; see e.g., People v. Steven B., 81 A.D.3d 843, 843 (2d Dep't 2011) ("The defendant's claim[] that he was deprived of effective assistance of counsel . . . rest[s] on matter dehors the record and, thus, may not be reviewed on direct appeal[.]") (citing, inter alia, People v. Vincent, 80 A.D.3d 633 (2d Dep't 2011)); see also Pearson v. Ercole, No. CV-06-5315(BMC),

2007 U.S. Dist. LEXIS 54053, *42 (E.D.N.Y. July 25, 2007) ("It is well established in New York practice that claimed errors that require consideration of evidence outside of the record are not properly raised on direct appeal.") (citing, *inter alia*, People v. Harris, 1 A.D.3d 881 (4th Dep't 2003));   Rasmussen v. Artus, No. 09-CV-0808(VEB), 2011 U.S. Dist. LEXIS 49800, *9 (W.D.N.Y. May 10, 2011) (denying Petitioner's ineffective assistance of appellate counsel based on failure to raise ineffective assistance of trial counsel claim where ineffective assistance of trial counsel claim implicated matters outside the record and would not have been appropriately raised on direct appeal).  Moreover, to the extent these claims implicate matters on the record, such claims amount to nothing more than a hind-sight expression of dissatisfaction with counsel's trial strategy.  It is well-settled that mere disagreement with strategic matters does not support a claim for constitutionally ineffective assistance. See Trapnell v. United States, 725 F.2d 149, 155 (2d Cir. 1983) (habeas court should not "second guess matters of trial strategy simply because the chosen strategy was not effective").  Accordingly, it was entirely reasonable for appellate counsel to decline raising an ineffective assistance of trial counsel claim on any or some of the afore-mentioned grounds.

In sum, the Court finds that Petitioner has failed to demonstrate that the state court's adjudication of this claim

contravened or unreasonably applied settled Supreme Court law. Thus, Petitioner's ineffective assistance of appellate counsel claim is dismissed in its entirety.

### 3.    Ground Seven is Unexhausted But Procedurally Defaulted

In ground seven of the petition, it appears Petitioner is raising a stand-alone claim based on cumulative trial court error. See Pet., Attach., Ground Seven; Mem. in Supp. at 24;  Reply at 2-5.  Because Petitioner raises this claim for the first time in the habeas petition, it is unexhausted for purposes of federal habeas review.   Nonetheless, because Petitioner no longer has a state court forum within which to raise this record-based claim, the Court deems it exhausted and procedurally defaulted. See Grey, 933 F.2d at 120; see also CPL § 440.10 [2][c] (barring review if a claim could have been raised on direct review).  To the extent Petitioner argues ineffective assistance of counsel as cause for the default, such argument fails insomuch as he failed to raise ineffective assistance of trial counsel as a stand-alone claim in the state court (see discussion at footnote 1 above) and his stand-alone ineffective assistance of appellate counsel claim is meritless (see section IV, 2 above).  Moreover, Petitioner has not demonstrated that this Court's failure to consider the claim will result in a fundamental miscarriage of justice. Accordingly, the Court dismisses Petitioner's cumulative error claim as procedurally defaulted.

**V.    Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.t. No. 1) is denied, and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     July 12, 2011
           Rochester, New York